IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JOE BELL; RICKY BRATCHER; BILLY RAY            PLAINTIFFS
BROWN; CLARKE DENTON; TONY DENTON;
CHARLES DUBOSE; ROGER EASTERLING;
CHRIS FORTENBERRY; ANGIE GAINEY;
BRENDA GUY; LARRY HARRELL; JAMES
McINTOSH; RONNIE MILEY; HAROLD
NELSON; WESLEY ODOM; BILLY JOE
POWELL; CHARLES RAWSON; EDWARD
G. SADOWSKI; MARY SESSUMS; C. H.
THAMES; KEITH WARE; and JOE MASSEY

VS.            CIVIL ACTION NO. 3:08-cv-00697 WHB/LRA

KOCH FOODS OF MISSISSIPPI, LLC            DEFENDANT

MEMORANDUM OF AUTHORITIES IN SUPPORT OF
KOCH FOODS OF MISSISSIPPI, LLC'S MOTION TO STAY PROCEEDINGS
AND COMPEL ARBITRATION

I. **INTRODUCTION**

This action was filed by twenty-three disgruntled chicken growers, many of whom lost their contracts with Koch Foods of Mississippi, LLC ("Koch Foods") because they refused to meet basic housing and other contractual requirements. The Court should compel arbitration because each Plaintiff signed a contract with Koch Foods containing a binding arbitration clause. And, unlike some cases, the Court does not even have to determine whether Plaintiffs' claims fall within the scope of the arbitration clause before doing so. Indeed, the Court should not make such a determination. The subject clause mandates that a panel of arbitrators will decide the applicability of the arbitration clause. Therefore, the Court should stay all proceedings and compel Plaintiffs to

submit their claims to arbitration where the arbitrators will decide whether Plaintiffs' claims are within the scope of the arbitration clause.

## II. FACTS

### A. PARTIES

Koch Foods is in the poultry business. It operates three processing plants in Mississippi. Koch Foods contracts with local farms ("growers") to grow its chickens. The arrangement with each grower may vary, but usually Koch Foods provides the baby chicks, the growers care for the chickens in their own facilities until they reach a certain weight, and then Koch Foods pays the grower a per-pound price for each chicken. Plaintiffs are all growers or former growers for Koch Foods.

### B. LAWSUIT

Plaintiffs filed this lawsuit on November 14, 2008. Each Plaintiff's claim arises from a unique set of facts, but most of the Plaintiffs claim that Koch Foods' minimum housing requirements were too burdensome, and that Koch Foods wrongfully terminated their contracts for failure to comply with these requirements. *See* Complaint at ¶¶ 26-47. Plaintiffs further allege that Koch Foods' actions were fraudulent and in violation of the Packers and Stockyards Act ("PSA"). *Id.*

Koch Foods denies that it wrongfully terminated the Plaintiffs' contracts. It also denies that its actions were fraudulent or in violation of the PSA. Almost every Plaintiff refused to comply with the basic housing and other requirements set forth in their contracts and, as a result, their contracts were terminated or not renewed by Koch Foods. Others have not even had their contracts terminated, and continue to grow chickens under their contracts.

C. <u>ARBITRATION CLAUSE</u>

The contract governing the relationship between each Plaintiff and Koch Foods is titled Broiler Growing Agreement ("Agreement").[1] All of Plaintiffs' Agreements contain the following arbitration clause:

> <u>ARBITRATION</u>: ALL DISPUTES OR CONTROVERSIES ARISING UNDER THIS AGREEMENT, INCLUDING TERMINATION THEREOF, SHALL BE DETERMINED BY A THREE MEMBER ARBITRATION PANEL (THE "PANEL") IN <u>SCOTT COUNTY MISSISSIPPI</u> SELECTED BY THE PARTIES TO THIS AGREEMENT, IN ACCORDANCE WITH THE PROVISIONS OF THIS AGREEMENT, AND SUCH DISPUTE OR CONTROVERSY SHALL BE JUDGED PURSUANT TO THE RULES AND PROCEDURES OF THE AMERICAN ARBITRATION ASSOCIATION (AAA), AND THE FINDINGS OF SUCH PANEL SHALL BE FINAL AND BINDING ON ALL THE PARTIES TO THIS AGREEMENT. Each party to any dispute hereunder shall appoint an arbitrator, qualified by the AAA, to serve on the panel, with the third panel member to be selected by the two appointed members. Each party shall pay the fees, costs, and expenses associated with the arbitrator selected by that party, and the fees, costs, and expenses associated with the third arbitrator shall be shared equally by both parties, as accrued. In the event of a final adjudication by the panel, all fees, costs, and expenses incurred by the successful party as a result of the dispute, including attorney's fees and arbitrator fees, shall be bourn by the unsuccessful party. The parties agree and recognize that the business of raising, processing, and producing poultry products is extensively involved in interstate commerce, and that various loans and extensions of credit made to GROWER and COMPANY are directly related thereto. The parties stipulate that the Federal Arbitration Act is applicable to this agreement. THE PARTIES STIPULATE THAT THE PROVISIONS OF THIS ARBITRATION CLAUSE SHALL BE A COMPLETE DEFENSE TO ANY SUIT, ACTION, OR PROCEEDING INSTITUTED IN ANY FEDERAL, STATE, OR LOCAL COURT OR BEFORE ANY ADMINISTRATIVE TRIBUNAL WITH RESPECT TO ANY CONTROVERSY OR DISPUTE ARISING DURING THE PERIOD OF THIS AGREEMENT AND WHICH IS ARBITRABLE AS SET FORTH IN THIS AGREEMENT, INCLUDING ANY CONTROVERSY INVOLVING PERSON(S) OR ENTITY(IES) NOT PARTY TO THIS AGREEMENT WHEN SUCH CONTROVERSY ALSO INVOLVES THE PARTIES TO THIS AGREEMENT. The applicability of this provision

---

[1] Two of the Plaintiffs, Ricky Bratcher and Chris Fortenberry, entered into Breeder Hen Agreements (BHA), not Broiler Growing Agreements. The difference between these two types of agreements is not at issue in the present Motion. Both agreements contain the same arbitration clause.

> shall be determined by the arbitrators, whose decision shall be final. The arbitration provisions of this agreement shall, with respect to such controversy or dispute, survive the termination or expiration of this agreement.

*See* Plaintiffs' Agreements, attached collectively as Exhibit "A" (emphasis in original).[2]

For purposes of this Motion, the relevant provision is "[t]he applicability of this provision shall be determined by the arbitrators, whose decision shall be final." Agreements at ¶ 12; BHAs at ¶ 15. This provision means that an arbitrator, not this Court, must determine whether Plaintiffs' claims are within the scope of the arbitration clause.

### III. ARGUMENT

#### A. THE FEDERAL ARBITRATION ACT APPLIES

The Federal Arbitration Act ("FAA") applies to all transactions "involving commerce." 9 U.S.C. §§ 1, 2. In addressing a motion to compel arbitration filed by Sanderson Farms in a similar case, this Court held that the FAA applied because "[p]oultry farming is undoubtedly subject to federal control and has an aggregate affect on interstate commerce." *Steed v. Sanderson Farms, Inc.*, 2006 WL 2844546, *3, n. 4 (S.D. Miss. 2006). Since this dispute concerns poultry farming, which plainly has an affect on interstate commerce, the FAA should apply to the subject arbitration clauses. Moreover, the parties here expressly stipulated that the FAA applied. Agreements at ¶ 12; BHAs at ¶ 15. ("The parties stipulate that the Federal Arbitration Act is applicable to this agreement").

Under the FAA, if a party refuses to arbitrate under a written arbitration agreement, then the other party may petition the court for an order compelling arbitration. 9 U.S.C. § 4. In determining whether to grant a motion to compel arbitration of a dispute that is subject to the FAA, courts must conduct a two-prong inquiry. *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713

---

[2] The arbitration clause is found at ¶ 12 in the Broiler Growing Agreements, and ¶ 15 of the two BHAs.

(Miss. 2002). First, courts must determine whether the parties agreed to arbitrate. *Id.* Second, courts must determine whether legal constraints external to the parties' agreement bar arbitration. *Id.*

### B. THE PARTIES AGREED TO ARBITRATE THE ISSUE OF ARBITRABILITY

To determine whether the parties agreed to arbitrate, the court must determine (1) whether there is a valid arbitration clause, and (2) whether the dispute falls within the scope of that clause. *Greater Canton Ford Mercury, Inc., et al. v. Ables*, 948 So. 2d 417, 421 (Miss. 2007). Plaintiffs cannot seriously dispute the validity of the subject arbitration clause. The arbitration clause is a material term of the Agreements, which were properly executed by each party. Agreements at ¶ 12; BHAs at ¶ 15. Plaintiffs are thus bound by the terms of the arbitration clause. *See American Heritage Life Ins. Co. v. Orr*, 294 F. 3d 702, 711 (5th Cir. 2002).

As for the scope of the arbitration clause, this Court must first determine whether it is the proper entity to decide that issue. It is not. The arbitration clause states that the arbitrators, not the courts, will decide the arbitrability of Plaintiffs' claims. Agreements at ¶ 12; BHAs at ¶ 15. Specifically, the clause states that "[t]he applicability of this provision shall be determined by the arbitrators, whose decision shall be final." *Id.*

The Mississippi Supreme Court recently addressed the enforceability of such provisions in arbitration clauses. It held that they were enforceable, reasoning that "when the parties have explicitly agreed that the question of arbitrability is to be decided by an arbitrator rather than the court, that agreement must be interpreted by an arbitrator." *Ables*, 948 So. 2d at 422. The Court also held that "arbitration of the issue of arbitrability is the mandatory result if those are the terms to which the parties have validly agreed." *Id.*

Here, the parties agreed that the "applicability" of the arbitration clause "shall be determined by the arbitrators." That is an "explicit" agreement that arbitrators, not courts, will

- 5 -

determine whether Plaintiffs' claims are subject to the arbitration clause.  This Court should honor the parties' agreement and compel arbitration to determine whether Plaintiffs' claims fall within the scope of the arbitration clause.

### C.  NO EXTERNAL LEGAL CONSTRAINT BARS ARBITRATION

The second prong of the Court's analysis is whether external legal constraints bar arbitration.  This prong is rooted in § 2 of the FAA, which mandates that a written agreement to arbitrate in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract."  9 U.S.C. § 2.  In analyzing this prong, courts apply ordinary state-law contract principles.  *East Ford*, 826 So. 2d at 713-714.

In their Complaint, Plaintiffs argue that the arbitration clause is unenforceable because it (1) violates the PSA, and (2) is both procedurally and substantively unconscionable.  Complaint at ¶ 55.  Both arguments are meritless.

#### 1.  The Arbitration Clause Does Not Violate The PSA

Plaintiffs first argue that the unilateral drafting and the alleged "take-it-or-leave-it" presentation of the arbitration clause violates § 192(a) of the PSA.  Complaint at ¶ 55.  Section 192(a) of the PSA states that "[i]t shall be unlawful for any…live poultry dealer, with respect to live poultry, to: (a) Engage in or use any unfair, unjustly discriminatory, or deceptive practice or device…."  7 U.S.C. § 192(a).  Judge Starrett, however, addressed and dismissed this exact argument in *Sanderson Farms*.

In *Sanderson Farms*, the plaintiffs argued, just as Plaintiffs argue here, that "the unilateral drafting of the Arbitration Agreement by [Sanderson Farms], offered to the [plaintiffs] on a 'take-it-or-leave-it' basis . . . violates [§ 192(a)] of the Packers and Stockyards Act . . . ."  *Sanderson Farms*, 2006 WL 2844546 at *11.  The Court summarily rejected this argument, noting that it had "been unable to find, nor have plaintiffs cited to, any authority from this jurisdiction or others

holding that an arbitration agreement violates the PSA or that the PSA constitutes some sort of exception to the FAA." *Id.*

In fact, the only two relevant cases the Court could find were from the Eleventh Circuit, and both held that the arbitration clause did not violate the PSA. *See Wheeler v. Cagle-Keystone Foods, LLC*, 148 Fed. Appx. 760, 761 (11th Cir. 2005) and *Adkins v. Cagle Foods Jr. LLC*, F.3d 1320, 1324-25 (11th Cir. 2005). The court in *Wheeler* held that the arbitration clause did not violate the PSA because the same agreements were offered to all growers. *Wheeler*, 148 Fed. Appx. At 761. The court in *Adkins* held that offering growers higher rates of pay in exchange for signing an agreement with an arbitration clause did not violate the PSA. *Adkins*, 411 F.3d at 1324-25. This Court should adhere to its precedent in *Sanderson Farms* and find that the present arbitration clause does not violate the PSA.

Alternatively, Plaintiffs argue that the recent Amendment to the PSA regarding arbitration clauses is evidence that the clause violates the PSA. Complaint at ¶ 55. This Amendment, however, applies only to contracts "entered into, amended, altered, modified, renewed, or extended" after June 18, 2008, and simply requires that contracts with growers contain a conspicuous provision advising growers of their right to decline arbitration before executing the contract. 7 U.S.C. § 197(c). Plaintiffs concede that this Amendment does not apply retroactively to any of the subject Agreements at issue. Nevertheless, they contend, without any supporting basis, that "[a]lthough the law is not retroactive, the reasoning is retroactive." Complaint at ¶ 55. There is no distinction, however, between applying the Amendment retroactively and applying its reasoning retroactively.

Indeed, failing to enforce the arbitration clauses at issue because no conspicuous provision expressly advises the growers of their right to decline arbitration would directly contradict the

Amendment. In other words, if the Court were to somehow divine the precise "reasoning" of the Amendment and then apply it retroactively to these Agreements, it would in fact, be applying the law itself retroactively, which is prohibited. At the time these Agreements were executed, there was no requirement in the PSA (or elsewhere) that growers be advised of their right to decline arbitration. If this Court uses a subsequent amendment to the PSA to impose such a requirement now, it would violate settled principles of statutory interpretation. *Mladinich v. Kohn*, 186 So. 2d 481, 483 (Miss. 1966). The Court should therefore reject Plaintiffs' argument that the 2008 Amendment to the PSA is evidence that all prior arbitration clauses are unenforceable.

### 2. The Arbitration Clause Is Not Unconscionable

Plaintiffs also argue, as an after-thought, that the arbitration clause is unenforceable because it is unconscionable. The Mississippi Supreme Court has defined the doctrine of unconscionability as "an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998). There are two types of unconscionability, procedural and substantive. *New South Federal Savings Bank v. Anding*, 414 F. Supp. 2d 636, 644 (S.D. Miss. 2005). Although not clearly delineated in the Complaint, Plaintiffs apparently believe that the subject arbitration clause is procedurally unconscionable because it was drafted by Koch Foods and allegedly presented to Plaintiffs' on a "take it or leave it" basis and that the clause is substantively unconscionable because it purportedly deprives Plaintiffs of a forum in which to resolve their disputes. The clause is neither.

#### a. Procedural Unconscionability

In order to prove procedural unconscionability, a party must demonstrate "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study

the contract and inquire about the contract terms." *Id.*  Plaintiffs' argument that the arbitration clause is procedurally unconscionable because the Agreement was drafted by Koch Foods and was allegedly offered on a "take it or leave it" basis is misguided.  Once again, Judge Starrett rejected this precise argument in *Sanderson Farms*.

The Court in *Sanderson Farms* concluded that (just as the clause did not violate the PSA) the clause was not unconscionable simply because the contract between Sanderson Farms and its growers was allegedly presented on a "take-it-or-leave-it" basis.  *Sanderson Farms* at 2006 WL 2844546 at *6.  As the Court noted, the cases enforcing such contracts are legion.  *Id. (citing Hughes Training, Inc. v. Cook*, 254 F. 3d 588, 594 (5th Cir. 2001); *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 520 (Miss. 2005); *Norwest Fin'l Mississippi, Inc. v. McDonald*, 905 So. 2d 1187, 1194 (Miss. 2005); and *Anding*, 414 F. Supp. 2d at 645).  Indeed, just as the Court in *Sanderson Farms* reasoned, although the Plaintiffs may argue that "they had no choice but to sign the [Agreements,] . . . the [Plaintiffs] had a choice as to whether to become poultry growers and, specifically, whether to become [Koch Foods] growers." *Id.*  This Court should likewise hold that the arbitration clause is not procedurally unconscionable.

### b. <u>Substantive Unconscionability</u>

To prove substantive unconscionability, Plaintiffs must show that the terms of the arbitration clause are "oppressive."  *East Ford*, 826 So. 2d at 714 (citations omitted).  Plaintiffs argue that the clause is substantively unconscionable because it "virtually assures that the Plaintiffs have no forum in which to present prospective claims against Koch."  Complaint at ¶ 55. There is absolutely no basis for this assertion.  Plaintiffs are able to assert their prospective claims in arbitration.  And, not only will arbitration provide Plaintiffs a forum, it will ensure a prompt resolution.  The FAA mandates that "the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts."  *AmSouth Bank v.*

*Bowens*, 351 F. Supp. 2d 571, 574 (S.D. Miss. 2005) (citations omitted). The arbitration clause is not substantively unconscionable.

In sum, the arbitration clause does not violate the PSA and is not unconscionable. It should therefore be enforced as part of the binding Agreements executed by Plaintiffs and Koch Foods.

## IV.  CONCLUSION

For these reasons, Koch Foods respectfully requests that the Court (1) stay all proceedings in this action; (2) compel the Plaintiffs to submit their claims to arbitration where the arbitrators will determine whether Plaintiffs' claims are subject to the arbitration clause; and (3) award any other relief the Court deems appropriate.

THIS the 29th day of December, 2008.

>Respectfully submitted,
>
>KOCH FOODS OF MISSISSIPPI, LLC
>
>By Its Attorneys,
>BAKER, DONELSON, BEARMAN, CALDWELL
>& BERKOWITZ, P.C.
>
>By: */s/Scott W. Pedigo*

Scott W. Pedigo (MSB No. 10735)
Everett E. White (MSB No. 101875)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
MAILING: Post Office Box 14167
Jackson, Mississippi  39236-4167
PHYSICAL: 4268 I-55 North, Meadowbrook Office Park
Jackson, Mississippi  39211-6391
*Telephone*:   (601) 351-2400
*Telecopier*:   (601) 351-2424

# CERTIFICATE OF SERVICE

I certify that on December 29, 2008, I electronically filed the foregoing *Memorandum of Authorities in Support of Koch Foods of Mississippi, LLC's Motion to Stay Proceedings and Compel Arbitration* with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

> T. Mark Sledge, Esq.
> GRENFELL, SLEDGE & STEVENS
> Post Office Box 16570
> Jackson, Mississippi  39236-6570
> tmshunts@aol.com
>
> J. Dudley Butler, Esq.
> BUTLER FARM AND RANCH LAW GROUP, PLLC
> Post Office Box 830
> Canton, Mississippi  39046-0830
> jdudley@farmandranchlaw.com
>
> **COUNSEL FOR PLAINTIFFS**
>
> Louis H. Watson , Jr., Esq.
> LOUIS H. WATSON, JR., PA
> 520 East Capitol Street
> Jackson , Mississippi  39201-2703
> louis@louiswatson.com
>
> **COUNSEL FOR CHRIS FORTENBERRY**

    /s/Scott W. Pedigo