IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


JOE BELL; RICKY BRATCHER; BILLY RAY BROWN;
CLARK DENTON; TONY DENTON; CHARLES DUBOSE;
ROGER EASTERLING; CHRIS FORTENBERRY;
ANGIE GAINEY; BRENDA GUY; LARRY HARRELL;
JAMES McINTOSH; RONNIE MILEY; HAROLD NELSON;
WESLEY ODOM; BILLY JOE POWELL; CHARLES RAWSON;
EDWARD G. SADOWSKI; MARY SESSUMS; C.H. THAMES;
KEITH WARE; and JOE MASSEY                          PLAINTIFFS


VS.                          CIVIL ACTION NO. 3:08-cv-697-WHB-LRA


KOCH FOODS OF MISSISSIPPI, LLC                       DEFENDANT


## OPINION AND ORDER

This cause is before the Court on the motions of the parties regarding the issue of arbitration. Having considered the pleadings, attachments thereto, as well as supporting and opposing authorities, the Court finds:

The Motion of Plaintiffs to Allow Arbitration Related Discovery and for Jury Trial or Hearing Allowing Oral Testimony Prior to the Decision Regarding Arbitration is not well taken and should be denied.

The Motion of Defendant to Stay Proceedings and Compel Arbitration should be granted in part, and denied in part.

## I. Factual Background and Procedural History

Plaintiffs, all of whom are or were poultry growers, had, at various times, entered into Broiler Growing Agreements or Breeder Hen Agreements (collectively "Agreements") with Defendant, Koch Foods of Mississippi, LLC ("Koch"). Plaintiffs allege that Koch breached the Agreements by taking actions including, but not limited to: (1) unilaterally amending the length of the Agreements from a three-year term to a one-year term; (2) delivering dead chickens; (3) refusing or failing to deliver chicken flocks as required under the Agreements; (4) requiring them to make upgrades and improvements to their chicken houses that were not required under the Agreements; and (5) unilaterally cancelling the Agreements. Based on the purported actions taken by Koch, Plaintiffs allege, *inter alia*, that they were "unable to raise and care for chickens with financial success."

On November 14, 2008, Plaintiffs filed the subject lawsuit against Koch alleging violations of the Packers & Stockyard Act, codified at 7 U.S.C. § 192, *et seq.*, and state law claims of fraud, fraudulent inducement, and fraudulent concealment. As Plaintiffs have alleged claims arising under federal law, specifically violations of the Packers & Stockyard Act, the Court finds it may properly maintain subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331. Koch now seeks to compel Plaintiffs to arbitrate their claims based on the following arbitration clause

that is contained in each of the subject Agreements:

> ARBITRATION: ALL DISPUTES OR CONTROVERSIES ARISING UNDER THIS AGREEMENT, INCLUDING TERMINATION THEREOF, SHALL BE DETERMINED BY A THREE MEMBER ARBITRATION PANEL (THE "PANEL") IN SCOTT COUNTY MISSISSIPPI SELECTED BY THE PARTIES TO THIS AGREEMENT, IN ACCORDANCE WITH THE PROVISIONS OF THIS AGREEMENT, AND SUCH DISPUTE OR CONTROVERSY SHALL BE JUDGED PURSUANT TO THE RULES AND PROCEDURES OF THE AMERICAN ARBITRATION ASSOCIATION (AAA), AND THE FINDINGS OF SUCH PANEL SHALL BE FINAL AND BINDING ON ALL THE PARTIES TO THIS AGREEMENT. Each party to any dispute hereunder shall appoint an arbitrator, qualified by the AAA, to serve on the panel, with the third panel member to be selected by the two appointed members. Each party shall pay the fees, costs, and expenses associated with the arbitrator selected by that party, and the fees, costs, and expenses associated with the third arbitrator shall be shared equally by both parties, as accrued. In the event of a final adjudication by the panel, all fees, costs, and expenses incurred by the successful party as a result of the dispute, including attorney's fees and arbitrator fees, shall be bourn by the unsuccessful party. The parties agree and recognize that the business of raising, processing, and producing poultry products is extensively involved in interstate commerce, and that various loans and extensions of credit made to GROWER and COMPANY are directly related thereto. The parties stipulate that the Federal Arbitration Act is applicable to this agreement. THE PARTIES STIPULATE THAT THE PROVISIONS OF THIS ARBITRATION CLAUSE SHALL BE A COMPLETE DEFENSE TO ANY SUIT, ACTION, OR PROCEEDING INSTITUTED IN ANY FEDERAL, STATE, OR LOCAL COURT OR BEFORE ANY ADMINISTRATIVE TRIBUNAL WITH RESPECT TO ANY CONTROVERSY OR DISPUTE ARISING DURING THE PERIOD OF THIS AGREEMENT AND WHICH IS ARBITRABLE AS SET FORTH IN THIS AGREEMENT, INCLUDING ANY CONTROVERSY INVOLVING PERSON(S) OR ENTITY(IES) NOT PARTY TO THIS AGREEMENT WHEN SUCH CONTROVERSY ALSO INVOLVES THE PARTIES TO THIS AGREEMENT. The applicability of this provision shall be determined by the arbitrators, whose decision shall be final. The arbitration provisions of this agreement shall, with respect to such controversy or dispute, survive the termination or expiration of this agreement.

See Mot. to Compel Arbitration [Docket No. 12], Ex. A (Agreements),

at ¶ 12.

## II.  Legal Discussion

Under the Federal Arbitration Act ("FAA"):

> A written provision in ... a contract evidencing a
> transaction involving commerce to settle by arbitration
> a controversy thereafter arising out of such contract or
> transaction, or the refusal to perform the whole or any
> part thereof, or an agreement in writing to submit to
> arbitration an existing controversy arising out of such
> a contract, transaction, or refusal, shall be valid,
> irrevocable, and enforceable, save upon such grounds as
> exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  To determine whether a contract "evidenc[es] a
transaction involving commerce" for the purposes of the FAA, the
United States Supreme Court has held that "control over interstate
commerce reaches not only the actual physical interstate shipment
of goods but also [extends to] contracts relating to interstate
commerce."  Allied-Bruce Terminix Companies, Inc. v. Dobson, 513
U.S. 265, 273-74 (1995).  The Court finds, based on the nature and
purpose of the subject Agreements, that they involve interstate
commerce.  See e.g. Steed v. Sanderson Farms, Inc., Civil Action
No. 2:05-cv-2146, 2006 WL 2844546, at *3 n.4 (S.D. Miss. Sept. 29,
2006)(finding that "[p]oultry farming is undoubtedly subject to
federal control and has an aggregate effect on interstate
commerce.").  Additionally, the parties in this case have agreed
"that the business of raising, processing, and producing poultry
products is extensively involved in interstate commerce, and that
various loans and extensions of credit made to [Plaintiffs] and
[Koch] are directly related thereto."  See Mot. to Compel

4

Arbitration, Ex. A (Agreements), at ¶ 12. For these reasons, the Court finds that the Agreements entered by the parties, which contain the subject arbitration clauses, involve interstate commerce as that term is applied to the FAA. See e.g. Allied-Bruce, 513 U.S. at 273-74 (indicating that the term "involving commerce" should be construed liberally as meaning "affecting commerce."); Arce v. Cotton Club of Greenville, Inc., 883 F. Supp. 117, 119 (N.D. Miss. 1995) ("Section 2's requirements are met where contractual activity facilitates or affects commerce, even tangentially.").

When determining whether parties should be compelled to arbitrate under the FAA, courts apply a two-step analysis. See Webb v. Investacorp, Inc., 89 F.3d 252, 257-58 (5th Cir. 1996). The first step is to determine whether the parties agreed to arbitrate the dispute in question, which requires consideration of "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." Id. at 258. "When deciding whether the parties agreed to arbitrate the dispute in question, courts generally ... should apply ordinary state-law principles that govern the formation of contracts.... In applying state law, however, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." Id.

(citations omitted).  Under the second step, the court must determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims."  <u>Id.</u> (citations omitted).

Before conducting the required two-step analysis, the Court will first consider Plaintiffs' motion for discovery.  The United States Court of Appeals for the Fifth Circuit has advised that when considering claims brought under the FAA, federal courts are to "conduct 'an expeditious and summary hearing, with only restricted inquiry into factual issues' bearing on the making of the arbitration agreement."  <u>Snap-on Tools Corp. v. Mason</u>, 18 F.3d 1261, 1265 n.4 (5th Cir. 1994)(<u>quoting</u> <u>Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.</u>, 460 U.S. 1, 22 (1983)).  Thus, courts have generally denied arbitration-related discovery absent a compelling showing that such discovery is required.  <u>See</u> <u>e.g.</u> <u>Kulpa v. OM Fin. Life Ins. Co.</u>, Civil Action No. 1:07-cv-1136, 2008 WL 351689, at *1 (S.D. Miss. Feb. 6, 2008).

In support of their motion for discovery, Plaintiffs argue that "discovery will provide insight as to the steps Koch took to insure that Plaintiffs understood exactly the effects of agreeing to the arbitration clause."  <u>See</u> Pls.' Reply to Mot. to Allow Arbitration-Related Discovery and for Jury Trial or Hearing [Docket No. 27], 2.  Plaintiffs also argue that "arbitration-related discovery will show that Koch knew Plaintiffs did not understand

the arbitration clause as they are unsophisticated business persons." Id. The Court finds that these arguments, i.e. that discovery is necessary to show that Plaintiffs did not understand the effects of the arbitration clauses, do not present a "compelling showing" that discovery is warranted because, under Mississippi law, a plaintiff "may not escape [an] agreement by simply stating [he] did not read the agreement or have it read to him or understand its terms." Cleveland v. Mann, 942 So. 2d 108, 115-16 (Miss. 2006)(emphasis added). See also Community Care Ctr. of Vicksburg, LLC v. Mason, 966 So. 2d 220, 227 (Miss. Ct. App. 2007) ("A plaintiff may not escape the terms of the agreement merely by stating she did not read it or understand its terms.").

Plaintiffs also argue that "the arbitration clause was presented to them on a 'take it or leave it' basis" and that "[a]rbitration-related discovery will either confirm or disprove this contention." Pls.' Reply to Mot. to Allow Arbitration-Related Discovery and for Jury Trial or Hearing, at 3. The Court finds that this argument does not present a "compelling showing" that discovery is warranted because Plaintiffs already have personal knowledge regarding the manner in which the subject Agreements, and arbitrations clauses contained therein, were presented to them. See e.g. Bank One, N.A. v. Coates, 125 F. Supp. 2d 819, 828 (S.D. Miss. 2001)(denying arbitration-related discovery upon a finding that the matters on which discovery was requested were "matters only the defendant himself could know.").

7

Next, Plaintiffs argue that "[a]rbitration-related discovery will allow [them] to prove that Koch knew exactly how expensive it would be for [them] to bring a claim pursuant to the arbitration clause, and that Koch did not communicate this ... when presenting them with the arbitration clause."  Pls.' Reply to Mot. to Allow Arbitration-Related Discovery and for Jury Trial or Hearing, at 3. The Court again finds that this argument does not present a "compelling showing" that discovery is warranted.  Considered most liberally, the Court finds that this argument is predicated on a claim that Plaintiffs did not understand the costs associated with arbitration at the time they signed the subject Agreements.  As discussed above, however, a party may not escape an agreement by simply stating that he or she did not understand its terms.  See e.g. Cleveland, 942 So. 2d at 115–16.  See also Bailey v. Estate of Kemp, 955 So. 2d 777, 783 (Miss. 2007) ("[A] party may neither neglect to become familiar with the terms and conditions and then later complain of lack of knowledge, nor avoid a written contract merely because he or she failed to read it or have someone else read and explain it.")(citations omitted).

Finally, Plaintiffs argue that "arbitration-related discovery will allow [them] to learn whether the Koch employees/agents who presented the arbitration clause to [them] understood the terms of said clause", and that "[a]rbitration-related discovery will provide information as to the training said Koch employee/agents

received in regard to the operation and practical effect of the arbitration clause." Pls.' Reply to Mot. to Allow Arbitration-Related Discovery and for Jury Trial or Hearing, at 3. As before, the Court finds that this argument does not present a "compelling showing" that discovery is warranted. Specifically, there has been no showing by any Plaintiff that he or she asked the Koch employees/agents with whom they dealt any questions regarding the arbitration clause, the manner in which it operated, or its "practical effects." As such, the Court finds that Plaintiffs have failed to show that the discovery they request is relevant to the making of the subject arbitration clauses. Additionally, in the event the Koch employees/agents made representations regarding the arbitration clauses to any of the plaintiffs, those plaintiffs would already have personal knowledge of the representations, if any, that were made.

In sum, after considering Plaintiffs' motion for discovery and the arguments made in support thereof, the Court finds that they have not made a "compelling showing" that discovery should be permitted and, therefore, the Court finds their motion should be denied.

As discussed above, when deciding a motion to compel arbitration, the court must first determine whether the parties agreed to arbitrate the dispute in question by considering (1) whether there is a valid agreement to arbitrate, and (2) whether

the dispute in question falls within the scope of the arbitration agreement. See Webb, 89 F.3d at 258. As regards the first inquiry, i.e. whether the parties entered a valid arbitration agreement, courts are instructed to "apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995); May v. Higbee Co., 372 F.3d 757, 764 (5th Cir. 2004). For a contract to be valid under Mississippi law, the following elements must be satisfied: (1) two or more contracting parties; (2) consideration; (3) a sufficiently definite agreement; (4) legal capacity to enter a contract; (5) mutual assent; and (6) the absence of any other legal prohibition that would preclude contract formation. See generally Rotenberry v. Hooker, 862 So. 2d 266, 270 (Miss. 2003); Lanier v. State, 635 So. 2d 813, 826 (Miss. 1994).

In the case *sub judice*, Plaintiffs argue that under Section 4 of the FAA[1], they are entitled to a jury trial on the issue of whether the arbitration clauses are valid. Specifically, Plaintiffs argue that a jury trial is required because there was fraud in the procurement of the arbitration clauses. See Pls.' Reply to Mot. to Allow Arbitration-Related Discovery and for Jury Trial or Hearing, at 5.

---

[1] This Section provides, in relevant part: "If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

In interpreting Section 4 of the FAA, the Fifth Circuit has held:

> Although the FAA permits parties to demand a jury trial to resolve factual issues surrounding the making of an arbitration agreement, or the failure, neglect, or refusal to perform the agreement, it is well-established that "[a] party to an arbitration agreement cannot obtain a jury trial merely by demanding one."

American Heritage Life Ins. Co. v. Orr, 294 F.3d 702, 710 (5th Cir. 2002)(quoting Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 1148, 1154 (5th Cir. 1992)). Additionally, "a party contesting the 'making' of the arbitration agreement must 'make at least some showing that under prevailing law, he would be relieved of his contractual obligations to arbitrate if his allegations proved to be true ... [and] produce some evidence to substantiate his factual allegations.'" Orr, 294 F.3d at 710 (quoting Dillard, 961 F.2d at 1154).

Plaintiffs argue that the arbitration clauses were procured by fraud because: (1) Koch knew that the prohibitive costs of arbitration would effectively eliminate any forum in which they could bring their claims; (2) the inclusion of a "loser pays provision" in the arbitration clauses prevents them "from being able to risk the filing of a claim"; (3) Koch did not explain the costs of arbitration; and (4) Koch knew or should have known that they did not understand the costs of arbitrating a claim under the arbitration clauses.  Pls.' Reply to Mot. to Allow Arbitration-Related Discovery and for Jury Trial or Hearing, at 4.

Under Mississippi law, fraud in the inducement of a contract "arises when a party to a contract makes a fraudulent misrepresentation, i.e., by asserting information he knows to be untrue, for the purpose of inducing the innocent party to enter into a contract." Lacy v. Morrison, 906 So. 2d 126, 129 (Miss. Ct. App. 2004).

> Contracts entered under such circumstances are voidable by the innocent party; however, the innocent party must first establish the presence of the misrepresentation or fraud alleged, which requires proving, by clear and convincing evidence, the following elements:
>
> > (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the matter reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) his consequent and proximate injury.

Id. (quoting Great Southern Nat'l Bank v. McCullough Env't Servs. Inc., 595 So. 2d 1282, 1289 (Miss. 1992)).  In the present case, although Plaintiffs argue that Koch committed fraud in procuring the arbitration clauses, they have not presented any evidence showing that Koch made false representations at the time the clauses were entered.  Thus, even if Plaintiffs' arguments proved to be true, they are insufficient to state a viable claim of fraudulent inducement under Mississippi law.  As such, the Court finds that Plaintiffs have failed to show either that the arbitration clauses are voidable, or that they would be relieved of

their contractual obligations to arbitrate under Mississippi law. Accordingly, the Court finds that Plaintiffs have failed to show that they are entitled to a jury trial under Section 4 of the FAA. See e.g. Orr, 294 F.3d at 710 (finding that the appellants' failure to identify any misrepresentation by the appellees peculiar to the arbitration agreements foreclosed their ability to state a claim of fraud in the inducement for the purposes of warranting a jury trial under the FAA). Accordingly, the Court finds that Plaintiffs' motion for a jury trial should be denied.[2] Additionally, because Plaintiffs have failed to state a viable fraud in the inducement claim, and have not presented any additional evidence or argument to show that the arbitration clauses are invalid under Mississippi law, the Court finds the arbitration clauses are valid.

The second determination to be made when considering whether the parties agreed to arbitrate is whether the dispute in question falls within the scope of the arbitration agreement. On this issue, the Fifth Circuit has held that in cases involving broad arbitration clauses, the parties "intend the clause to reach all aspects of the relationship." Nauru Phosphate Royalties Inc. v. Drago Daic Interests Inc., 138 F.3d 160, 165 (5th Cir. 1998). See also Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd., 139

---

[2] Plaintiffs have also requested a hearing under Rule 7.2(F) of the Uniform Local Rules. As the issues raised by the parties may be decided on the pleadings, Plaintiffs' request for a hearing is denied.

F.3d 1061, 1067 ("We resolve doubts concerning the scope of coverage of an arbitration clause in favor of arbitration. Arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.")(alterations in original)(citations omitted). In the case *sub judice*, the arbitration clauses provide, in relevant part: "ALL DISPUTES OR CONTROVERSIES ARISING UNDER THIS AGREEMENT, INCLUDING TERMINATION THEREOF, SHALL BE DETERMINED BY A THREE MEMBER ARBITRATION PANEL ..." See Mot. to Compel Arbitration, Ex. A (Agreements), at ¶ 12. The Court finds, based on the broad language of the arbitration clauses, that all of the claims alleged by Plaintiffs are within the scope of those clauses.

Having found that the parties entered valid arbitration agreements and that all of Plaintiffs' claims are within the scope of those agreements, the Court next considers whether arbitration should nevertheless be foreclosed because of one or more applicable statutes or policies. In response to the motion to compel arbitration, Plaintiffs argue that the arbitration clauses should not be enforced because they are unconscionable.

Mississippi recognizes two types of unconscionability – procedural and substantive. In this state, unconscionability is generally defined as "an absence of meaningful choice on the part of one of the parties, together with contract terms which are

unreasonably favorable to the other party." <u>Entergy Miss., Inc. v.</u>
<u>Burdette Gin Co.</u>, 726 So. 2d 1202, 1207 (Miss. 1998)(citations
omitted). Questions concerning unconscionability are reviewed
"under the circumstances as they existed at the time the contract
was made." <u>Vicksburg Partners, L.P. v. Stephens</u>, 911 So. 2d 507,
517 (Miss. 2005)(citations omitted).

Under Mississippi law, procedural unconscionability may be
proven by showing "a lack of knowledge, lack of voluntariness,
inconspicuous print, the use of complex legalistic language,
disparity in sophistication or bargaining power of the parties
and/or a lack of opportunity to study the contract and inquire
about the contract terms." <u>East Ford, Inc. v. Taylor</u>, 826 So. 2d
709, 714 (Miss. 2002)(quoting <u>Pridgen v. Green Tree Fin. Servicing</u>
<u>Corp.</u>, 88 F. Supp. 2d 655 (S.D. Miss. 2000)). Here, Plaintiffs
argue that the arbitration clauses are procedurally unconscionable
because: (1) they constitute contracts of adhesion that were
presented on a "take it or leave it basis"; (2) there existed
unequal bargaining power between the parties; and (3) they had no
meaningful choice when contracting. <u>See</u> Pls.' Mem. in Resp. to
Mot. to Compel Arbitration [Docket No. 16], at 17. The Court finds
that even if the arbitration clauses were contracts of adhesion,
presented on a take it or leave it basis, and that Plaintiffs did
not have a meaningful choice when contracting, these arguments
would not render the agreements void. <u>See</u> <u>e.g.</u> <u>Dillard</u>, 961 F.2d

at 1154 ("Contracts in which one party has minimal bargaining power, also referred to as contracts of adhesion, are not automatically void."). <u>See also</u> <u>East Ford</u>, 826 So. 2d at 716 (explaining that the fact that an arbitration agreement is included in a contract of adhesion renders the agreement procedurally unconscionable <u>only</u> where the stronger party's terms are unnegotiable <u>and the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all</u>)(emphasis added). In the present case, while Plaintiffs argue that the arbitration clauses were presented on a take it or leave it basis, they have not provided any evidence that they were either prevented from contracting with a poultry company other than Koch, or that they were unable to refrain from contracting at all. <u>See e.g.</u> <u>Steed v. Sanderson Farms, Inc.</u>, Civil Action No. 2:05-cv-2146, 2006 WL 2844546, at *7 (rejecting a claim of procedural unconscionability on the grounds that (1) the plaintiffs "had a choice as to whether to become poultry growers and, specifically, whether to become ... broiler growers" for the defendant, and (2) there was no showing that the plaintiffs were "under such timing or other pressures as to have been prevented from contracting with another party on more favorable terms or ... refraining from contracting at all" at the time they entered the poultry grower agreements)(citations omitted).

Plaintiffs also claim that the arbitration clauses are

procedurally unconscionable because of the manner in which the agreements were written, specifically that they were not provided notice that they were waiving their right to a jury trial. <u>See</u> Pls.' Mem. in Resp. to Mot. to Compel Arbitration, at 17. The Court finds this argument lacks merit as the arbitration clauses are written in simple plain English, portions of the clauses are written in all capital letters, and the clauses clearly indicate that all contractual disputes arising between the parties "SHALL BE DETERMINED BY A THREE MEMBER ARBITRATION PANEL (THE "PANEL") IN SCOTT COUNTY MISSISSIPPI SELECTED BY THE PARTIES TO THIS AGREEMENT, IN ACCORDANCE WITH THE PROVISIONS OF THIS AGREEMENT, AND SUCH DISPUTE OR CONTROVERSY SHALL BE JUDGED PURSUANT TO THE RULES AND PROCEDURES OF THE AMERICAN ARBITRATION ASSOCIATION (AAA) AND THE FINDINGS OF SUCH PANEL SHALL BE FINAL AND BINDING ON ALL THE PARTIES TO THIS AGREEMENT." <u>See</u> Mot. to Compel Arbitration, Ex. A (Agreements), at ¶ 12. Thus, even though the arbitration clauses do not contain specific language advising that the parties were waiving their right to a jury trial, the language in the clauses explicitly placed Plaintiffs on notice that all claims under the Agreements would be decided through arbitration. <u>See</u> <u>e.g.</u> <u>Steed</u>, 2006 WL 2844546, at *8. <u>See</u> <u>also</u> <u>Stephens</u>, 911 So. 2d at 520 (rejecting a claim of procedural unconscionability on finding, in part, that the defendants "were two competent individuals signing a well-marked, highly visible agreement which indicated very

clearly that dispute resolution would be accomplished by way of arbitration.").

For these reasons, the Court finds that the arbitration clauses are not procedurally unconscionable.

Plaintiffs also argue that the arbitration clauses are substantively unconscionable. Under Mississippi law:

> When reviewing a contract for substantive unconscionability, we look within the four corners of an agreement in order to discover any abuses relating to the specific terms which violate the expectations of, or cause gross disparity between, contracting parties. Substantive unconscionability may be proven by showing the terms of the arbitration agreement [clause] to be oppressive. Substantive unconscionability is present when there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach.

Stephens, 911 So. 2d at 521 (citations omitted).

In support of their substantive unconscionability claim, Plaintiffs argue that the arbitration agreements are unconscionable because there is an "absence of meaningful choice and oppressive terms", and they result in a "severely diminished limitation of actions." See Pls.' Mem. in Resp. to Mot. to Compel Arbitration, at 17. The Court finds that these arguments are not substantiated as the arbitration clauses do not restrict Plaintiffs from bringing any claims, and do not restrict or limit the amount or types of damages that may be awarded by the arbitrators. See e.g. Stephens,

911 So. 2d at 522 (finding that an arbitration agreement was not substantively unconscionable in a case in which the agreement "merely provide[d] for a mutually agreed-upon forum for the parties to litigate their claims and [was] benign in its effect on the parties' ability to pursue potential actions.").

Next, Plaintiffs argue that the arbitration clauses are substantively unconscionable because of the excessive costs associated with arbitration including, but not limited to, the mandatory requirement of a three arbitrator panel, the mandatory fee-splitting costs of arbitration, and the mandatory requirement that the unsuccessful party will bear all costs associated with arbitration. Pls.' Mem. in Resp. to Mot. to Compel Arbitration, at 17. On the issue of arbitration costs, the United States Supreme Court has recognized that a motion to compel arbitration may be denied if a party to the agreement would "be saddled with prohibitive [arbitration] costs." Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 90-92 (2000). However, the "party seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive ... bears the burden of showing the likelihood of incurring [prohibitive] costs." Id. at 92. Under current Fifth Circuit precedent, the party resisting arbitration must provide "some individualized evidence that [they] likely will face prohibitive costs in the arbitration at issue and that [they are] financially incapable of meeting those costs."

Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 300 (5th Cir. 2004) (citing Livingston v. Associates Fin., Inc., 339 F. 3d 553, 557 (7th Cir. 2003); Bradford v. Rockwell Semiconductor Sys., Inc., 238 F.3d 549, 556-58 (4th Cir. 2001)).

In the case *sub judice*, Plaintiffs have provided evidence that their "up-front" costs of arbitration would be approximately $30,000. See Pls.' Mem. in Resp. to Mot. to Compel Arbitration, at 14, and Ex. A. Plaintiffs, however, have not provided any individualized evidence that they "are financially incapable of meeting those costs."[3] See Carter, 362 F.3d at 300. See also Bradford, 238 F.3d at 558 (affirming decision enforcing arbitration agreement upon finding, in part, that the plaintiff had "failed to demonstrate any inability to pay the arbitration fees and costs, much less prohibitive financial hardship", because he had offered "no evidence that he was unable to pay the [fees] that he was billed by the AAA, or that the fee-splitting provision deterred him from pursuing his statutory claim."). In addition, the Fifth Circuit has held that a loser pays provision in an arbitration agreement does not invalidate such agreement because "the question of which party to the arbitration will ultimately prevail at

---

[3] In their affidavits, Plaintiffs aver that they "cannot now" nor could they "have ever been able financially to pay the costs of arbitration." See Pls.' Reply to Mot. to Allow Arbitration-Related Discovery and for Jury Trial or Hearing, Ex. A (Plaintiff Affidavits), at ¶ 8. Plaintiffs, however, have not presented any "individualized evidence" in support of their conclusory assertions.

arbitration is subject to speculation only and, therefore, is not a basis to hold [an arbitration agreement] unenforceable."). Orr, 294 F.3d at 712.[4]  Accordingly, the Court finds that Plaintiffs have failed to show that the subject arbitration clauses should be invalidated based on the prospective costs of arbitration.

Finally, Plaintiffs argue that the arbitration clauses should not be enforced because they violate the Packers & Stockyard Act, specifically 7 U.S.C. § 192(a), which provides: "It shall be unlawful ... for any live poultry dealer with respect to live poultry, to: (a) Engage in or use any unfair, unjustly discriminatory, or deceptive practice or device."  In support of this argument, Plaintiffs cite to 7 U.S.C. § 197c, which provides, in relevant part:

> (a) In general – Any livestock or poultry contract that contains a provision requiring the use of arbitration to resolve any controversy that may arise under the contract shall contain a provision that allows a producer or grower, prior to entering the contract to decline to be bound by the arbitration provision.

> (b) Disclosure – Any livestock or poultry contract that contains a provision requiring the use of arbitration shall contain terms that conspicuously disclose the right of the contract producer or grower, prior to entering the contract, to decline the requirement to use arbitration to resolve any controversy that may arise under the livestock or poultry contract.

---

[4]  The Orr court also expressly recognized that "the rules of the AAA provide Appellants sufficient avenues to request fee-paying relief, if necessary."  Orr, 294 F.3d at 712.

> (c) Dispute resolution – Any contract producer or grower that declines a requirement of arbitration pursuant to subsection (b) has the right, to nonetheless seek to resolve any controversy that may arise under the livestock or poultry contract, if, after the controversy arises, both parties consent in writing to use arbitration to settle the controversy.
>
> (d) Application – Subsections (a) (b) and (c) shall apply to any contract entered into, amended, altered, modified, renewed, or extended after the date of the enactment of the Food, Conservation, and Energy Act of 2008.
>
> (e) Unlawful practice – Any action by or on behalf of a packer, swine contractor, or live poultry dealer that violates this section (including any action that has the intent or effect of limiting the ability of a producer or grower to freely make a choice described in subsection (b)) is an unlawful practice under this chapter.

7 U.S.C. § 197c (2008). While Plaintiffs concede that 7 U.S.C. § 197c does not apply in this case because all of the subject Agreements were entered before the 2008 enactment date, they argue that the Court should nevertheless rely on these provisions to find that the arbitration clauses sought to be enforced are unfair and deceptive.

The Court finds that the arbitration clauses at issue do not violate 7 U.S.C. § 192(a). First, the Court finds that the arbitration clauses cannot be invalidated pursuant to 7 U.S.C. § 197c because, by its plain language, that Section does not apply retroactively and, therefore, does not apply to the subject Agreements. Second, there has been no showing that the arbitration clauses should be deemed unfair or deceptive based on the Packers and Stockyard Act as it existed at the time the clauses were

entered.  See e.g Steed, 2006 WL 2844546, at *11 (finding that the disputed arbitration agreement was not "unfair" or "deceptive" and, therefore, did not violate the Packers & Stockyard Act because (1) the same agreement had been offered to all growers, and (2) there had been no showing of procedural or substantive unconscionablity).

In sum, having found that the subject Agreements evidence a transaction involving commerce, that a valid agreement to arbitrate exists between each plaintiff and Koch, and that no legal constraints foreclose arbitration, the Court finds that the motion of Koch to compel arbitration should be granted.  The Court additionally finds, because all of Plaintiffs' claims are subject to arbitration, that the above referenced case should be dismissed.


### III.  Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Allow Discovery [Docket No. 17] and Motion for Jury Trial or Hearing Allowing Oral Testimony Prior to the Decision Regarding Arbitration [Docket No. 18] are hereby denied.


IT IS FURTHER ORDERED that the Motion of Koch Foods of Mississippi, LLC, to Compel Arbitration [Docket No. 11] is hereby granted.

IT IS FURTHER ORDERED that the Motion of Koch Foods of Mississippi, LLC, to Stay Proceedings [Docket No. 9] is hereby denied. As Plaintiffs are hereby ordered to arbitrate all of their claims, and nothing remains to be litigated in this Court, the Court finds that this case should be dismissed. Any party may move to re-open this case if further judicial intervention is necessary to enforce the rulings of this Court, or to enforce the rulings of the arbitrators.

SO ORDERED this the 5th day of May, 2009.


s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE